Dear Oklahoma County District Attorney C. Wesley Lane II
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Must all occupants deemed "in possession" of real property receive notice when a tax deed is demanded by the holder of a County Treasurer's Certificate of Tax Sale pursuant to 68 O.S. Supp. 2003, § 3118[68-3118]?
 Delinquent Ad Valorem Taxes
¶ 1 Article 31 of the Oklahoma Tax Code (68 O.S. 2001 Supp.2003, §§ 3101-3147) sets out specific procedures for collecting delinquent ad valorem taxes.[1] If ad valorem taxes for a parcel of real property are not paid and become delinquent a lien is placed on the property, which is subject to sale by the county treasurer. 68 O.S. 2001, § 3108[68-3108]. A person who pays the delinquent taxes, interest and costs in full is issued a "County Treasurer's Certificate of Tax Sale." Id. § 3111. The holder of this tax sale certificate may apply for a tax deed from the county treasurer if the property has not been redeemed within two years.68 O.S. Supp. 2003, § 3118[68-3118](A). An applicant is required to adhere to certain notice requirements before a tax deed shall issue. Id. "In matters pertaining to tax sales, statutes prescribing the manner of service of notice and the issuance of tax deeds thereunder, are mandatory. . . ." Smith v. Bostaph,229 P. 1039 (syllabus) (Okla. 1924). A tax deed issued under a defective notice is void. Cornelius v. McKee, 246 P.2d 725,726 (Okla. 1952); Westerheide v. Wilcox, 124 P.2d 409, 412
(Okla. 1942). The statute for notice of a tax deed provides:
 A. If no person shall redeem any land on which the tax lien has been sold within two (2) years, at any time after the expiration, thereafter and on production of the certificate of purchase, the county treasurer of the county in which the sale of such land took place shall execute to the purchaser, or the heirs or assigns of the purchaser, a deed for land remaining unredeemed. The deed shall vest in the grantee an absolute estate in fee simple in the lands, subject however, to all claims which the state may have on the lands for taxes or other liens or encumbrances and shall extinguish the rights of any mortgagee of record of the lands to whom notice was sent as provided for by law. However, before any holder of a certificate of purchase issued at any tax sale of real estate shall be entitled to a deed as provided in this section, the holder of a certificate of purchase shall cause a written notice signed by such holder to be served, either by process server, by the sheriff or by restricted certified mail with return receipt requested, upon the owner of the land if the owner is within the state, upon the person in possession of the land, if the same be occupied, and upon all mortgagees and lienholders of record of the land, which notice shall recite the sale of the lands, specifying the date of such sale and notifying such person that unless redemption is made from such sale within sixty (60) days after the date of the service of such notice, a tax deed will be demanded and will issue as provided by law. If the real property to be sold is listed as homestead property on the last tax rolls, then in addition to all other notification requirements, the applicant shall also cause the notice of sale to be posted on the front door of the property by the county sheriff at least thirty (30) days prior to such deed being issued. The cost of the posting of the notice shall be added to the amount necessary to redeem the property from sale.
68 O.S. Supp. 2003, § 3118[68-3118] (emphasis added).
¶ 2 In addition to the notice requirements for a tax deed, specified persons are entitled to redeem the real property from the lien resulting from the tax sale.
 The owner of any real estate sold for taxes, or any person having a legal or equitable interest therein, may redeem the same from the lien resulting from tax sale at any time before the execution of a deed of conveyance therefor by the county treasurer, by paying to the county treasurer, if the tax sale certificate is held by an individual purchaser, the sum paid to the county for such certificate and all taxes paid and endorsed thereon, together with interest thereon at the rate of eight percent (8%) per annum from the date of sale or purchase thereof from the county, and interest at the rate of eight percent (8%) per annum on taxes endorsed on such certificate from the date of each such endorsement, and in addition thereto costs provided in this article, for the use of the owner of the certificate of such sale, and the county treasurer shall hold the money paid to the order of such certificate owner, his or her agent, or attorney; and if the county is the holder of such tax lien, by paying to the county treasurer the sum for which the property was sold with penalty at the rate of twelve percent (12%) per annum and such additional costs as may have accrued; provided, that minors or incapacitated or partially incapacitated persons may redeem from taxes any real property belonging to them within one (1) year after the expiration of such disability, with interest and penalty at not more than ten percent (10%) per annum. Upon such redemption, the county treasurer shall enter the same upon the sales record, giving a receipt therefor to the person redeeming, file the duplicate with the county clerk, and retain the triplicate in the county treasurer's office.
68 O.S. 2001, § 3113[68-3113] (emphasis added). The Oklahoma Supreme Court recognized that statutory provisions regarding redemption from tax sale "must be construed liberally in favor of redemption." Sherrill v. Deisenroth, 541 P.2d 862, 866 (Okla. 1975). Indeed, the court stated, "Public policy favors redemption by payment of all delinquent taxes prior to the execution of a deed by the County Treasurer and is in accord with the clear guidelines established by the Legislature relating to the disenfranchising process." Id. at 867. The court has adopted the rule that "until a resale tax deed, valid on its face, has been issued and delivered, the landowner has the right to redeem from the tax sale and tax resale." Petrovics v. Brown,235 P.2d 708, 709 (Okla. 1951).
¶ 3 The policy in favor of redemption is not limited to the actual owner but can extend to the equitable owner too. "The law does not limit the right of redemption to the record owner, but extends that right to the equitable owner as well." Burnett v.McGrath, 293 P. 1102, 1103 (Okla. 1930). In fact, the court neither limits the protection to equitable owners who acquired their interest prior to the sale for taxes nor requires equitable owners to notify the fee simple owner.
 A lessee is in a substantial sense an owner of the property, whether he be a lessee for life, or years, or at will. A redemption by him may be essential to the protection of a substantial right. Nor do we consider it any valid objection to his claim to redeem that he has acquired his interest since the sale for taxes; nor that he redeems without the knowledge of the fee-simple owner.
Scales v. Locke, 221 P. 737, 737-38 (Okla. 1923) (quotingByington v. Rider, 9 Iowa 566 (Iowa 1859)). A lessee who redeems property is obligated to resume rental payments to the lessor once the rental obligations exceed the redemption amount.Treetop Enter., Inc. v. Tolan, 583 So.2d 254, 255 (Ala. 1991).
¶ 4 Jurisprudence in Oklahoma favors redemption. Every opportunity is to be afforded persons entitled to redeem real estate from a lien resulting from a tax sale prior to the execution of a tax deed by the County Treasurer.
 What Does "In Possession" Mean?
¶ 5 The specific question posed is whether all persons on the property are considered to be "in possession." This query is important in instances where the property at issue is a hotel or motel, and raises the issue of whether a hotel or motel guest is "in possession" of a room. The Oklahoma Supreme Court has stated:
 The chief distinction between a tenant and an innkeeper's guest lies in the element of possession. A tenant is deemed to have exclusive legal possession of the demised premises and stands responsible for their care and condition. A guest, on the other hand, has merely a right to the use of the premises while the innkeeper retains his control over them, is responsible for the necessary care and attention and retains the right of access for such purpose. Modern law tends to regard as a guest anyone who is a patron of the inn as such, and receives the same treatment as that accorded to short-term guests.
Buck v. Del City Apartments, Inc., 431 P.2d 360, 363 (Okla. 1967). Tenants clearly are persons in possession of the land, hold rights to real estate[2] and are entitled to notice pursuant to Section 3118. An innkeeper's guest who occupies a hotel/motel room is not considered a tenant in possession, but a "guest for transient occupancy." 15 O.S. 2001, § 505[15-505](2)(g). Therefore, a typical hotel/motel guest need not receive notice pursuant to Section 3118. An innkeeper's guest staying an extended period of time may factually and legally become a tenant in possession, and would therefore require notice pursuant to Section 3118. This would be resolved by specific facts not included in your question, and thus is beyond the scope of this Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 6 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. An applicant for a tax deed must give notice pursuant to 68 O.S. Supp. 2003, § 3118(A) to "the owner of the land if the owner is within the state, upon the person in possession of the land, if the same be occupied, and upon all mortgagees and lienholders of record of the land." Id.
 2. Tenants are persons in possession of the land and must be given notice. Buck v. Del City Apartments, Inc., 431 P.2d 360, 363 (Okla. 1967).
 3. Typical hotel or motel occupants are innkeepers' guests for transient occupancy and do not require notice. 15 O.S. 2001, § 505(2)(g).
 4. Whether hotel or motel occupants staying for an extended period of time are innkeepers' guests for transient occupancy will depend on the facts and circumstances of each case, and cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 DAVID L. KINNEY Assistant Attorney General
[1] This office previously issued two Attorney General Opinions on this process. See A.G. Opins. 02-12, 00-21.
[2] See 41 O.S. 2001, §§ 1[41-1], 52, 111, 117, 120.